## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **J.D. and J.E.D., Individually and as Parents and Natural Guardians of J.C.D., a Minor** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No. _____** |
| **v.** | : | |
| | : | |
| **BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS,** | : | **JURY DEMANDED** |
| | : | |
| **Serve On:** | : | |
| | : | |
| Joshua Civin, Chief Legal Officer Baltimore City Public Schools 200 E. North Avenue, Room 208 Baltimore, MD 21202 | : | |
| | : | |
| and | : | |
| | : | |
| **TROY MITCHELL** *in his personal capacity* Baltimore City Public Schools 200 E. North Avenue, Room 208 Baltimore, MD 21202, | : | |
| | : | |
| | : | |
| and | : | |
| | : | |
| **JUSTIN CHAMBLISS** *in his personal capacity* Baltimore City Public Schools 200 E. North Avenue, Room 208 Baltimore, MD 21202, | : | |
| | : | |
| | : | |
| and | : | |
| | : | |
| **DANIELLE OLIVER** *in her personal capacity* Baltimore City Public Schools 200 E. North Avenue, Room 208 Baltimore, MD 21202, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT AND JURY DEMAND

1.      Plaintiffs J.D. and J.V.D., individually and as parents and natural guardians of J.C.D., a

minor (hereinafter collectively "Plaintiffs") hereby sue Defendants Baltimore City Board of School

Commissioners (hereinafter sometimes "Board" or "School Board"), Troy Mitchell in his personal

capacity (hereinafter "Mitchell"), Justin Chambliss in his personal capacity (hereinafter sometimes

"Chambliss") and Danielle Oliver in her personal capacity (hereinafter sometimes "Oliver") (hereinafter

collectively "Defendants"). In support of their causes of action, Plaintiffs state as follows:

## INTRODUCTION

2.      In April 2022, when J.C.D. was eight years old, she was sexually abused by one of her

classmates in Defendant Oliver's third-grade classroom at Montebello Elementary and Middle School in

Baltimore City, Maryland.

3.      Defendants Baltimore City Board of School Commissioners; the school principal,

Defendant Troy Mitchell; the assistant principal, Defendant Justin Chambliss, and J.C.D.'s teacher,

Danielle Oliver, acted with deliberate indifference to J.C.D., failed to act as reasonable school officials and

individuals tasked with the care and custody of J.C.D., and their actions and omissions directly and

proximately resulted in the sexual assault of J.C.D.

4.      After the assault, Defendants knowingly and negligently failed to respond to and

investigate the sexual abuse, made inadequate efforts to provide safety accommodations for J.C.D., took

inadequate steps to protect J.C.D.'s safety and personal welfare at school, failed to provide J.C.D. with any

academic or therapeutic resources or support after the abuse ended, declined to provide any information

at all to Plaintiffs as J.C.D.'s parents and generally exercised deliberate indifference for J.C.D.'s safety and

personal wellbeing while she was at school, including by failing to move the perpetrator to a different

classroom environment.

5.      As a direct and proximate result of Defendants' conduct, Plaintiffs and J.C.D. lived in fear

that she would be sexually assaulted again each time she returned to school. Plaintiff's family was forced to remove J.C.D. from the classroom environment and, eventually, to put J.C.D. in private school so J.C.D. could go to school unafraid and safe from further sexual abuse.

6.      Plaintiffs seek recovery on their own behalf and on behalf of J.C.D. for the significant damages they have suffered as a result of the incidents of sexual abuse that should have been prevented by the Defendants and as a result of Defendants' violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq.; the Fourteenth Amendment to the United States Constitution (under 42 U.S.C. § 1983); other federal and state laws; and common-law torts.

## JURISDICTION AND VENUE

7.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

8.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. 1681(a), et seq., and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the United States Constitution.

9.      This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3)(4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

10.     The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

11.     Venue as to all claims is appropriate in this Court pursuant to 28 U.S.C. § 1391 inasmuch as the relevant facts giving rise to this case and damages sustained by Plaintiff and J.C.D. occurred in this District.

12.     This Court has person jurisdiction over the Defendants, who all reside within this

judicial district.

## THE PARTIES

13.     Plaintiffs are adult citizens of the State of Maryland who reside in Baltimore City, Maryland.

14.     Plaintiff J.D. is a citizen of the state of Maryland, and a resident of Baltimore City. At all relevant times Plaintiff J.D. has been the father and natural guardian of J.C.D., a minor.

15.     Plaintiff J.E.D. is a citizen of the state of Maryland, and a resident of Baltimore City. At all relevant times Plaintiff J.E.D. has been the mother and natural guardian of J.C.D., a minor.

16.     Plaintiffs sue individually and on behalf of their daughter, J.C.D., a minor.

17.     At all relevant times, J.C.D. was a minor student at Montebello Elementary and Middle School (hereinafter "Montebello"), a public elementary school controlled and managed by Defendant Baltimore City Board of School Commissioners.

18.     Defendant Baltimore City Board of School Commissioners (hereafter sometimes "Board") constitutes the governing body for Baltimore City's public school system, with its principal office at 200 E. North Avenue, Baltimore, Maryland 21202, in Baltimore City.

19.     Defendant Board operates under various names, including Baltimore City Public Schools.

20.     The Board controls educational matters that affect Baltimore City residents, including the oversight and management of supervision of public schools within the city's geographical jurisdiction (including Montebello Elementary and Middle School).

21.     The Board is tasked with upholding Maryland State Board regulations and creating and enforcing policies and procedures to protect and ensure the safety and wellbeing of students, including those pertaining to the conduct alleged herein, and to comply with federal and state laws afforded to its students, including those pertaining to the conduct alleged herein.

22.     Further, the Board is charged with maintaining and improving the local education systems

and "seek[ing] in every way to promote the interests of the schools under its jurisdiction." Md. Code Ann., Educ. 4-101.

23.     The Board at all relevant times was a final policymaker and delegated policymaking authority to Troy Mitchell and Justin Chambliss, among other individuals.

24.     Defendant Board and each of its public schools, including Montebello Elementary and Middle School, are and were at all relevant times recipients of federal funds within the meaning of 20 U.S.C. § 1681(a).

25.     Montebello Elementary/Middle School (hereafter "Montebello") is a public primary school for grades pre-K through 8, located at 2040 E. 32nd St., Baltimore City, Maryland. The sexual assault detailed herein occurred at Montebello's swing location, located at Baltimore City Public Schools, Professional Development Center, 2500 E. Northern Parkway, Baltimore City, Maryland. At all relevant times, these locations were monitored, managed, and controlled by the Board, directly and by and through its agents and servants, including the individual Defendants named herein.

26.     Defendant Troy Mitchell is a citizen of Maryland and is and was the principal of Montebello. At all relevant times, Mitchell was a school administrator and an employee of the Board.

27.     At all relevant times Mitchell acted as a policymaker, policy enforcer, manager, and supervisor for the Board and for Montebello. At all relevant times, Mitchell's responsibilities included implementing procedures and protocols created and mandated by the Board; ensuring compliance with mandated policies, protocols, rules and laws; supervising and controlling school grounds.

28.     Defendant Justin Chambliss is a citizen of Maryland and was at all relevant times the assistant principal of Montebello. At all relevant times, Mitchell was a school administrator and an employee of the Board.

29.     At all relevant times, Chambliss acted as a policy enforcer, manager, supervisor and administrator for Montebello. Chambliss was tasked with implementing procedures and protocols created

and mandated by the Board; ensuring compliance with mandated policies, protocols, rules and laws; and supervising and controlling school grounds.

30.     At all relevant times, Defendants Board, Mitchell and Chambliss had a duty to monitor and supervise students, staff members, employees, and others who worked and/or were present on school property for education purposes, including J.C.D., and other students and teachers, including Defendant Oliver.

31.     Defendant Oliver is a citizen of Maryland and is and was, at all relevant times, a public education teacher employed by the Board to teach at Montebello. Oliver was J.C.D.'s  grade teacher during the 2021–2022 school year.

32.     At all relevant times, Oliver was responsible for the care, supervision, education, and safety of students in her class, including J.C.D.

33.     At all relevant times, Mitchell, Chambliss, and Oliver acted as employees of the Board, within the scope of their employment.

34.     The Board is vicariously liable for the acts and omissions of Mitchell, Chambliss, and Oliver as stated herein.

35.     The Board, Mitchell, and Chambliss were responsible for policy making, decision making, hiring/firing decisions and complying and ensuring compliance with applicable policies, procedures, duties of care and laws.

36.     Each Defendant had the power and responsibility to uphold and enforce policies, laws and procedures to protect the safety and well-being of the students of Montebello, and to provide them with the benefits of those rules, laws and requirements.

## FACTUAL BACKGROUND

37.     Plaintiffs incorporate all of the foregoing paragraphs and averments as if fully set forth herein.

38.     In 2001, the U.S. Department of Education Office for Civil Rights (hereafter "OCR") issued its *Revised Sexual Harassment Guidance: Harassment of Students by School employees, Other Students or Third Parties*.[1] This guide stated that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn." And it indicated that schools must take prompt and effective action to intervene in and prevent the reoccurrence of sexual abuse and harassment of students by their peers in order to ensure a safe learning environment.

39.     Five years later, in 2006, OCR issued a Dear Colleague Letter to U.S. public boards of education, including Defendant Board, and public schools, including Montebello, to remind them of their obligations to prevent and remedy sexual harassment including abuse and harassment committed by students against other students.

40.     In 2011, OCR issued a "Dear Colleague Letter" that further reminded public schools, including Board and Montebello, that they have an independent obligation to investigate and adequately respond to reports of sexual harassment, and that schools were legally required to provide sufficient training and education to staff, administrators, faculty, and students pertaining to sexual harassment and sexual violence.

41.     Despite the notice provided by the OCR pertaining to the Defendants' obligation to prevent and remedy sexual harassment and abuse that occurred amongst its students, Defendants failed to take adequate, prompt and effective steps to prevent and respond to the sexual assault and harassment of J.C.D. by her peers at school.

42.     Defendants were required to provide training and/or information to school administrators, staff, students, and parents to protect students from sexual abuse and harassment.

43.     Sufficient training of school employees, agents, administrators and representatives should have included identifying signs of child sexual abuse and monitoring for and intervening in abuse.

---

[1] The Guide can be found at: https://www2.ed.gov/offices/OCR/archives/pdf/shguide.pdf.

44.     Training was also required to ensure that Board employees, faculty and representatives adequately responded to sexual assaults and harassment of students by investigating reports of abuse, remediating sexual harassment and abuse, properly reporting sexual abuse and harassment to the Board, and ensuring the safety and wellbeing of students who were abused or harassed to protect them from future abuse and thus enable them to be in a safe educational environment.

45.     At all relevant times, Plaintiff is informed and believes that the Defendants Board, Mitchell, and Chambliss failed to obtain sufficient training and failed to sufficiently train, supervise and manage Board employees, including Mitchell, Chambliss, and Oliver, to ensure that they were sufficiently knowledgeable and equipped to protect children from sexual abuse and harassment and appropriately respond to reports of abuse in order to prevent further occurrences and provide a safe educational environment for students, specifically, J.C.D..

46.     At all relevant times, Defendants failed to conduct a substantive investigation into the sexual abuse and harassment suffered by J.C.D., that was committed against her based on her gender, and took no steps to remedy J.C.D.'s further exposure to sexual abuse and harassment after the incidents were discovered.

47.     At all relevant times herein, Plaintiff is informed and believes that Defendants Mitchell and Oliver failed to sufficiently supervise J.C.D. and other children in her class to the point that she suffered sexual abuse and repeated exposure to her perpetrator.

## FACTS

48.     Plaintiffs incorporate all of the foregoing paragraphs and averments as if fully set forth herein.

49.     In February 2020, J.C.D. and her two sisters enrolled in Montebello.

50.     During the 2021-2022 school year, J.C.D. was an eight-year-old student at Montebello and was assigned to have Oliver as her third-grade teacher.

51.    J.C.D. enjoyed learning at Montebello but also had difficulty accessing the curriculum due to developmental disabilities. Her parents sought additional supportive services from Montebello and the Board through an I.E.P. but were denied services by Montebello and the Board upon the recommendation of an I.E.P. team in March 2022.

52.    K.D., a male student, was also in Ms. Oliver's class with J.C.D. during the 2021-2022 school year.

53.    Prior to April 25, 2022, K.D. suffered sexual abuse.

54.    Prior to April 25, 2022, Mitchell, Chambliss, and Oliver were made aware by K.D.'s great-grandmother that K.D. had suffered sexual abuse and was therefore at significant risk of committing sexual abuse against other students.

55.    Defendants denied K.D.'s great-grandmother's/family's request for an aide to ensure he acted appropriately and did not harass or assault other students.

56.    On April 25, 2022, K.D. and J.C.D. were attending school in Ms. Oliver's class.

57.    K.D. sexually harassed and assaulted J.C.D. in full view of her teacher and the other students in class on April 25, 2022.

58.    Mitchell notified J.C.D.'s mother, Plaintiff J.E.D., of the assault on April 25, 2022, and promised that J.C.D. would not be exposed to K.D. any further at school. He indicated that Montebello would be making a referral to the school district's Title IX Office, which would call with a case number and next steps. No one ever did so.

59.    J.E.D. confirmed the assault had occurred with her daughter that day and took her to a physician for evaluation.

60.    On April 26, 2022, Plaintiff J.D. emailed Chambliss and Mitchell to request a formal incident report and a meeting with K.D.'s guardian.

61.    In a May 2022 meeting with Chambliss, Mitchell, K.D., and K.D.'s great-

grandmother/guardian confirmed she reported to Chambliss and K.D.'s IEP team that K.D. had previously been sexually abused and had serious behavioral issues that could potentially pose a threat to other students. K.D.'s great-grandmother also confirmed that K.D.'s family requested an aide for him, but Defendants denied that request.

62.     Defendants did not report K.D.'s assault of J.C.D. to law enforcement or Child Protective Services, contrary to legal requirements for mandated reporting.

63.     Defendants did not impose any discipline on K.D.

64.     Plaintiffs kept J.C.D. home from school from April 26, 2022 through May 2, 2022 out of concern for her safety at school, and because of J.C.D.'s fear of being in the classroom with K.D. Despite Plaintiffs' requests, Montebello did not send schoolwork home to her to enable her to keep up with her assignments and have reasonable access to the curriculum.

65.     On May 3, 2022, Plaintiffs sent J.C.D. back to school. J.C.D. and K.D. were placed in the same classroom that day, despite Mitchell's promise that that would not happen. This caused J.C.D. tremendous emotional distress. Plaintiffs contacted the school, and Mitchell again promised that J.C.D. would not be placed in the same classroom as K.D.

66.     On May 10, 2022, having requested and not received an incident report or safety plan, Plaintiffs filled out an online form on the website of Baltimore City Public Schools to report the harassment of her daughter.

67.     On May 11, 2022, J.C.D. was again placed in the same classroom as K.D. at Montebello, causing her great emotional pain and distress.

68.     Plaintiffs promptly advised Mitchell that J.C.D. had again been placed in the same classroom as K.D. Plaintiffs also advised Mitchell that they would need to keep J.C.D. home until they received written assurances that their daughter would not encounter K.D. They again requested that J.C.D.'s coursework be sent home.

69.     On June 8, 2022, Mitchell sent an informal report to Plaintiffs detailing the findings of an internal investigation into the incident. The report corroborated the abuse J.C.D. experienced and stressed that K.D. and J.C.D. should not be in the same classroom under any circumstances.

70.     Defendant Board promoted Oliver in June 2022 to the role of Assistant Principal at Glenmount Elementary/Middle School.

71.     Defendant Board transferred Chambliss in July 2022 to an assistant principal position at Wildwood Elementary School.

72.     On September 4, 2023, J.C.D. reported to Plaintiffs that K.D. had been in her class since August 28, 2023, causing her substantial emotional harm and distress.

73.     Defendants never notified Plaintiffs that K.D. had been placed in J.C.D.'s class.

74.     Defendants implemented no safety plan to prevent her from encountering K.D.

75.     Because they were unable to secure any adequate assurances that their daughter would be separated from K.D., Plaintiffs withdrew her from Baltimore City Public Schools and enrolled her in an independent school.

76.     As a direct and proximate result of the sexual abuse she experienced, the repeated and unnecessary retraumatization caused by encountering her abuser, K.D., and the fear of being subjected to further abuse, J.C.D. suffered psychological and emotional trauma that interfered and continues to interfere with her daily functioning and availability for learning. She experienced and continues to experience increased anxiety and anger, flashbacks, and intrusive thoughts, among other negative outcomes. These effects caused J.C.D. to suffer severe distress and thereby had a negative impact on her participation in school programs and on her academic performance.

77.     J.C.D. will require therapy and other care on a continuing and ongoing basis for the injuries related to the sexual abuse and because of the Defendants' failure to respond to and address the sexual abuse that she suffered.

78.    As a direct and proximate result of the tortious acts and omissions of Defendants, directly and by and through their agents, servants, and employees, J.C.D. has suffered and will continue to suffer serious and severe physical and emotional damages of a permanent and lasting nature, including but not limited to:

    a.   ongoing humiliation, embarrassment, shame, and guilt;

    b.   difficulty in maintaining focus and attention in school;

    c.   debilitating headaches, stomach pain and nausea;

    d.   emotional distress;

    e.   severe mental anguish and despair;

    f.   severe anxiety, nervousness, and fearfulness;

    g.   depression;

    h.   sleep disturbances;

    i.   irritability and mood swings;

    j.   feelings of numbness and emptiness;

    k.   withdrawal and isolation from social relationships;

    l.   a loss of enjoyment of life;

    m.   difficulty in trusting and interacting with others, including those in positions of authority;

    n.   loss of earning capacity;

    o.   past and future expenses for medical and/or psychological care; and

    p.   other damages that may be disclosed during the course of legal discovery in this action.

79.    As a direct and proximate result of the tortious acts and omissions of the Defendants, the Plaintiffs, as individuals, have suffered financial losses and will likely continue to suffer financial losses

resulting from medical expenses for treatment and testing of J.C.D., educational expenses associated with having to educate J.C.D. at an independent school, and therapeutic and medical treatment expenses to treat J.C.D. for resulting trauma, psychological injuries and the emotional toll of occurrences alleged herein.

## COUNT I

### VIOLATIONS PURSUANT TO 20 U.S.C.A. § 1681(C), TITLE IX, EDUCATION AMENDMENTS OF 1972
### (against Defendant Board)

80.     Plaintiffs incorporate all of the foregoing paragraphs and averments as if fully set forth herein.

81.     Public schools in the state of Maryland that are under the control and management of the Board, including Montebello, received federal funding at all relevant times to Plaintiffs' claims and thus were subject to the provisions and requirements of Title IX of the Education Amendments Act of 1972, codified as 20 U.S.C. §§ 1681-1686.

82.     The sexual abuse and harassment that J.C.D. suffered at the hands of her classmate K.D., and her subsequent involuntary placement in the same classroom with K.D. on multiple occasions, was so severe, pervasive, and objectively offensive that it effectively deprived her of equal access to the educational opportunities and benefits provided by Montebello.

83.     J.C.D. suffered student-on-student sexual assault and harassment, which is sex discrimination prohibited by Title IX.

84.     The sexual assaults and harassment J.C.D. suffered created a hostile environment at Montebello.

85.     The Board had the duty and authority to take corrective action to sufficiently investigate, respond to, and protect J.C.D. from sexual abuse and harassment by her classmate K.D., and protect her from being retraumatized by repeatedly having to share the same classroom as her abuser for sustained

periods of time.

86.    The Board was alerted to the possibility of K.D. committing sexual abuse, sexual

harassment, and other harassment within the meaning of Title IX.

87.    The Board had actual knowledge that K.D. was likely to commit sexual harassment or

abuse against Montebello students, including K.D.

88.    Actual notice of the sexual abuse and harassment was received through school officials,

school administrators, employees and school faculty including but not limited to Mitchell, Chambliss, and

Oliver, each of whom had the authority to investigate and address the abuse and harassment and to

institute corrective measures but failed to do so.

89.    By its actions and inactions, the Board acted with deliberate indifference toward J.C.D.

and her rights to a safe and secure education environment and left J.C.D. vulnerable to further sexual

abuse and harassment by her classmates in the future. These actions and inactions materially impaired

J.C.D.'s ability to pursue her education at Montebello and effectively denied J.C.D. access to the

educational programs and benefits of all public schooling in Baltimore City Public Schools, all in

violation of the requirements of Title IX.

90.    The Board violated the requirements of Title IX of the Education Amendments Act of

1972 (hereinafter "Title IX") by the following acts and omissions, all of which were conducted and/or

failed to be conducted in deliberate indifference to the rights of J.C.D. guaranteed by Title IX and in

reckless and deliberate indifference to the risk of harm posed to J.C.D.:

       a.    Failing to take action to prevent J.C.D. from being abused by K.D., including by

           failing to provide an aide or other appropriate close supervision in the classroom

           environment;

       b.    Failing to conduct its own internal investigation of the sexual abuse and harassment

           of J.C.D.:

c.  Failing to control and monitor the behavior of K.D. and failing to take immediate and appropriate corrective action to prevent him from committing sexual abuse and harassment against J.C.D.;

d.  Choosing to take no action to protect J.C.D., despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent further discrimination, sexual assault, abuse, harassment, and retraumatization;

e.  failing to adequately provide or coordinate adequate health, psychological, counseling, and academic assistance and services to J.C.D. after the sexual abuse and harassment in order to minimize the harm suffered due to the discrimination and harassment, including sexual assault and abuse;

f.  failing to develop policies and procedures to address all reports of sexual abuse and harassment to attend to and respond to complaints and information pertaining to abuse of a student by other students;

g.  failing to appoint, designate and publicly identify a Title IX coordinator as required by 34 C.F.R. § 106.8(a) to investigate and communicate the findings of complaints of sexual abuse, and thereby the sexual abuse and harassment committed against J.C.D.;

h.  failing to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment and sex discrimination complaints in violation of Title IX;

i.  failing to establish an atmosphere at Montebello in which J.C.D. would feel safe, secure and content and be provided with the appropriate and equal opportunity to learn;

j.  failing to provide sufficient training for school staff, employees, workers and representatives pertinent to sexual abuse and harassment of students;

k.    failing to sufficiently train school staff, employees, workers, and representatives in Title IX requirements;

l.    failing to terminate or discipline Montebello employees and agents identified herein, including Mitchell, Chambliss, and Oliver, for their willful disregard of the safety and rights of J.C.D., or being deliberately indifferent thereto; and

m.    other acts, omissions and deliberate indifferent conduct that may be disclosed during the course of discovery.

91.    Additionally, as school administrators and employees, agents, servants and representatives of the School Board, Defendants Mitchell, Chambliss, and Oliver each had authority to take corrective action to respond to the abuse and harassment. Chambliss, Mitchell and Oliver had actual knowledge that the abuse and harassment had occurred and acted with deliberate indifference by ignoring Plaintiffs' requests for updates and information, by failing to take steps to address and control the other students' behavior to protect J.C.D. from future abuse, and by failing to provide J.C.D. with any resources to ensure that her educational rights were preserved.

92.    The Board's deliberate indifference and lack of adequate response to the occurrences of harassment and sexual abuse was clearly unreasonable, was compounded by the offensive and disturbing nature of the abuse and harassment and effectively denied J.C.D. access to educational benefits and opportunities.

93.    The sexual abuse and harassment that J.C.D. suffered from severely undermined and detracted from her educational experience and effectively denied her equal access to Montebello's resources and opportunities. The abuse and harassment had a concrete, negative effect on J.C.D.'s ability to participate in the educational opportunities and benefits provided by Montebello and all public elementary schools within the Baltimore City Public School District, as her parents could not be assured of her physical and emotional safety in the District.

16

94.     The Board's indifference remained unremedied over a significant period of time and was never addressed by the Board or any of its employees, agents, or representatives.

95.     The Board's deliberate indifference and actions and inactions materially altered the conditions of J.C.D.'s educational environment and therefore denied J.C.D. the full benefits of a public education.

96.     But for suffering gender-based sexual abuse and harassment at school and the Board's and its employees' and representatives' deliberate indifference and failure to abide by Title IX in their response to the abuse and harassment, J.C.D. would have received full educational benefits of public schooling in Baltimore City Public Schools, would not have been completely denied a public education in Baltimore City, and would not have suffered injuries, including those described in paragraph 78, *supra*.

97.     As a direct and proximate result of the Board's above-described actions, inactions and deliberate indifference, J.C.D. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to those described in paragraph 78, *supra*.

98.     As a direct and proximate result of the Board's above-described actions, inactions and deliberate indifference, J.D. and J.E.D. sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to those described in paragraph 79, *supra*.

WHEREFORE, Plaintiff demands judgment against the Board for economic and noneconomic damages, costs, pre- and post-judgment interest, and attorneys' fees under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT II

### VIOLATIONS OF J.C.D.'S CONSTITUTIONAL RIGHTS
### UNDER 42 U.S.C. § 1983
### (Against Defendant Mitchell)

99.     Plaintiffs incorporate by reference and re-allege each and every paragraph and averment set forth above, as though fully set forth at length herein.

100.    At all relevant times, J.C.D. had a clearly established constitutional right to bodily integrity, including the right to be free of sexual assault.

101.    At all relevant times, J.C.D. had a clearly established constitutional right to be free of sexual harassment.

102.    At all relevant times, J.C.D. had a clearly established constitutional right to a free and appropriate public education.

103.    At all relevant times hereto, Defendant Mitchell was a state actor acting under the color of state law as principal and school administrator of Montebello and was tasked with enforcing applicable state law and administrative regulations, as well as adopting, implementing, enforcing, and promulgating policies, procedures, rules and protocols of the Board at Montebello.

104.    At all relevant times, Mitchell had a duty as a person cloaked with authority under color of law to safeguard, and refrain from acting in violation of, students' federally protected and constitutionally guaranteed rights, including those of J.C.D.

105.    Mitchell was reasonably aware that J.C.D. was at risk of suffering discriminatory peer harassment through student-on-student sexual abuse, before J.C.D. was sexually abused.

106.    Mitchell, as a school administrator, responded to the risk of discriminatory peer harassment with deliberate indifference and in a clearly unreasonable manner in light of the known circumstances.

107.    Mitchell declined to take steps to provide J.C.D. with equal access to public education by refusing to provide key information to Plaintiffs as described above, declining to take measures to prevent future sexual abuse of J.C.D., failing to ensure that J.C.D. would be allowed to attend another school within the same school district if safely attending Montebello was not possible, and by failing to implement any responsive means after the abuse occurred to ensure that J.C.D. received equal access to public education.

108.    Plaintiff is informed and believes that Mitchell's deliberate indifference was motivated by discriminatory intent spurred by J.C.D.'s gender and status as a female student who had suffered sexual abuse at the hands of a male student.

109.    Mitchell's actions demonstrated a disregard for, and deliberate indifference to, J.C.D.'s well-being and her clearly established constitutionally protected educational rights, equal protection rights, and right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

110.    Mitchell knew and should have known that his actions would likely violate J.C.D.'s constitutional rights and acted with such disregard of J.C.D.'s clearly established rights that his actions cannot reasonably be characterized as being in good faith.

111.    As a direct and proximate result of Mitchell's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.C.D. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to the injuries described in paragraph 78, *supra*, along with attorneys' fees and costs and such other and further relief as this Court deems just and proper.

112.    As a direct and proximate result of Mitchell's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.D. and J.E.D. sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to those described in paragraph 79, *supra*, along with attorneys' fees and costs and such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff demands judgment against Mitchell for economic, non-economic, and punitive damages; costs, pre- and post-judgment interest; and attorneys' fees under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT III

### VIOLATION OF J.C.D.'S CONSTITUTIONAL RIGHTS
### UNDER 42 U.S.C. § 1983
### (against Defendant Chambliss)

113.    Plaintiffs incorporate by reference and re-allege each and every paragraph and averment set forth above, as though fully set forth at length herein.

114.    At all relevant times, J.C.D. had a clearly established constitutional right to bodily integrity, including the right to be free of sexual assault.

115.    At all relevant times, J.C.D. had a clearly established constitutional right to be free of sexual harassment.

116.    At all relevant times, J.C.D. had a clearly established constitutional right to a free and appropriate public education.

117.    At all relevant times hereto, Defendant Chambliss was a state actor acting under the color of state law as an assistant principal and school administrator of Montebello and was tasked with enforcing applicable state laws and administrative regulations, as well as adopting, implementing, enforcing, and promulgating policies, procedures, rules and protocols of the Board at Montebello.

118.    At all relevant times, Chambliss had a duty as a person cloaked with authority under color of law to safeguard, and refrain from acting in violation of, students' federally protected and constitutionally guaranteed rights, including those of J.C.D.

119.    Chambliss was reasonably aware that J.C.D. was at risk of suffering discriminatory peer harassment through student-on-student sexual abuse, before J.C.D. was sexually abused.

120.    Chambliss, as a school administrator, responded to the risk of discriminatory peer harassment with deliberate indifference and in a clearly unreasonable manner in light of the known circumstances.

121.    Chambliss declined to take steps to provide J.C.D. with equal access to public education

by refusing to provide key information to Plaintiffs as described above, declining to take measures to prevent future sexual abuse of J.C.D., failing to ensure that J.C.D. would be allowed to attend another school within the same school district if safely attending Montebello was not possible, and by failing to implement any responsive means after the abuse occurred to ensure that J.C.D. received equal access to public education, among other deliberately indifferent acts and omissions.

122.    Plaintiff is informed and believes that Chambliss's deliberate indifference was motivated by discriminatory intent spurred by J.C.D.'s gender and status as a female student who had suffered sexual abuse at the hands of a male student.

123.    Chambliss's actions demonstrated a disregard for, and deliberate indifference to, J.C.D.'s well-being and her clearly established constitutionally protected educational rights, equal protection rights, and right to bodily integrity and to be free of sexual assault and sexual harassment under the Fourteenth Amendment to the United States Constitution.

124.    Chambliss knew and should have known that his actions would likely result in a violation of J.C.D.'s constitutional rights and acted with such disregard of J.C.D.'s clearly established rights that his actions cannot reasonably be characterized as being in good faith.

125.    As a direct and proximate result of Chambliss's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.C.D. suffered, and continues to suffer injuries, including, without limitations, emotional distress, loss of educational benefit, psychological trauma, and mortification.

126.    As a direct and proximate result of Chambliss's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.C.D. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to the injuries described in paragraph 78, *supra*, along with attorneys' fees and costs and such other and further relief as this Court deems just and proper.

127.    As a direct and proximate result of Chambliss's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.D. and J.E.D. sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to those described in paragraph 79, *supra*, along with attorneys' fees and costs and such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiffs demand judgment against Chambliss for economic, non-economic, and punitive damages; costs, pre- and post-judgment interest; and attorneys' fees under the laws of the United States and further demand a trial by jury on all issues so triable as of right by a jury.

## COUNT IV

### VIOLATION OF J.C.D.'S CONSTITUTIONAL RIGHTS
### UNDER 42 U.S.C. § 1983
### (against Defendant Oliver)

128.    Plaintiffs incorporate by reference and re-allege each and every paragraph and averment set forth above, as though fully set forth at length herein.

129.    At all relevant times, J.C.D. had a clearly established constitutional right to bodily integrity, including the right to be free of sexual assault.

130.    At all relevant times, J.C.D. had a clearly established constitutional right to be free of sexual harassment.

131.    At all relevant times, J.C.D. had a clearly established constitutional right to a free and appropriate public education.

132.    At all relevant times hereto, Defendant Oliver was a state actor acting under the color of state law as a teacher at Montebello and was tasked with enforcing applicable state laws and administrative regulations, as well as implementing and enforcing policies, procedures, rules and protocols of the Board in her classroom at Montebello.

133. At all relevant times, Oliver had a duty as a person cloaked with authority under color of law to safeguard, and refrain from acting in violation of, students' federally protected and constitutionally guaranteed rights, including those of J.C.D.

134. Chambliss was reasonably aware that J.C.D. was at risk of suffering discriminatory peer harassment through student-on-student sexual abuse, before J.C.D. was sexually abused, because, among other reasons, he was informed that K.D. had been sexually abused and suffered from significant behavioral problems, which led his guardians to request an aide for him to enable him to access the curriculum in the general education setting to prevent him from acting inappropriately toward other students.

135. Oliver responded to the risk of discriminatory peer harassment with deliberate indifference and in a clearly unreasonable manner in light of the known circumstances.

136. Oliver declined to take steps to provide J.C.D. with equal access to public education by refusing to provide key information to Plaintiffs as described above, declining to take measures to prevent future sexual abuse of J.C.D., failing to ensure that J.C.D. would be allowed to attend another school within the same school district if safely attending Montebello was not possible, and by failing to implement any responsive means after the abuse occurred to ensure that J.C.D. received equal access to public education, among other deliberately indifferent acts and omissions.

137. Plaintiff is informed and believes that Oliver's deliberate indifference was motivated by discriminatory intent spurred by J.C.D.'s gender and status as a female student who had suffered sexual abuse at the hands of a male student.

138. Oliver's actions demonstrated a disregard for, and deliberate indifference to, J.C.D.'s well-being and her clearly established constitutionally protected educational rights, equal protection rights, and right to bodily integrity and to be free of sexual assault and sexual harassment under the Fourteenth Amendment to the United States Constitution.

139.    Oliver knew and should have known that her actions would likely result in a violation of J.C.D.'s constitutional rights and acted with such disregard of J.C.D.'s clearly established rights that her actions cannot reasonably be characterized as being in good faith.

140.    As a direct and proximate result of Oliver's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.C.D. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to the injuries described in paragraph 78, *supra*, along with attorneys' fees and costs and such other and further relief as this Court deems just and proper.

141.    As a direct and proximate result of Oliver's deliberate indifference to and violation of J.C.D.'s clearly established constitutional rights, J.D. and J.E.D. sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to those described in paragraph 79, *supra*, along with attorneys' fees and costs and such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiffs demand judgment against Oliver for economic, non-economic, and punitive damages; costs, pre- and post-judgment interest; and attorneys' fees under the laws of the United States and further demand a trial by jury on all issues so triable as of right by a jury.

## COUNT V

### NEGLIGENCE
### (against all Defendants)

142.    Plaintiff repeats and re-alleges each and every factual allegation set forth in the paragraphs above as though fully set forth at length herein.

143.    At all relevant times herein, Defendants, directly and by and through their agents, employees and representatives, had a duty to exercise reasonable care to protect J.C.D. from harm.

144.    Defendants were required to use the same degree of care for J.C.D. that a reasonably prudent parent would use to care for her during the school day, the time she was entrusted to

their responsibility.

145.    J.C.D.'s welfare and physical custody was entrusted to the Defendants during the period of time that she attended Montebello and was on properties and premises owned, operated, controlled, or supervised by the Defendants.

146.    Defendants knew and reasonably should have known that J.C.D.'s safety was in jeopardy, because, among other reasons, K.D.'s guardians had requested an aide to control K.D.'s behavior, given his history of abuse, and were denied.

147.    Defendants failed to take reasonable steps to ensure that all students in Oliver's class, including K.D., were being sufficiently supervised and monitored, behaving appropriately, and interacting with each other in a safe and respectful manner.

148.    As result of Defendants' negligence, J.C.D. suffered sexual assault and harassment from K.D. and additional emotional trauma occasioned by the failure to appropriately investigate the incident and failure to keep her apart from K.D.

149.    Failure to provide sufficient supervision creates a more dangerous environment for students. It was reasonably foreseeable that failure to sufficiently supervise J.C.D. and her classmates, including K.D., could result in sexual abuse and inappropriate treatment of J.C.D.

150.    As superintendent, Defendant Board was tasked with the management of educational programs at Montebello including the creation and implementation of policies and procedures pertaining to sexual harassment and abuse of students by other students.

151.    Defendants Mitchell, Chambliss, and Oliver failed to ensure that policies and procedures pertaining to the prevention of student-on-student sexual harassment and abuse at Montebello.

152.    Defendants owned, possessed and/or were charged with the care and control of the Montebello property and thus had a duty of landowners to maintain the premises in reasonably safe condition.

153.    J.C.D. was an invitee of the Defendants and was allowed and encouraged to be in Montebello and on Defendants' property due to her status as a public-school student in Baltimore City, MD.

154.    The Board, Mitchell, Chambliss, and Oliver were tasked with implementing, maintaining, enforcing and ensuring compliance with procedures and protocols intended to protect students; supervising, training and monitoring teachers and employees at Montebello to ensure that they were sufficiently protecting and caring for minor students; addressing concerns about student safety and wellbeing; and all other tasks delegated to her by the Board.

155.    The Board, Mitchell, and Chambliss failed to ensure that Oliver had the resources, assistance and tools to sufficiently supervise and keep safe the students in her class; sufficiently educate and train Montebello staff and employees how to monitor and control students' behavior to prevent sexual abuse and assault of students.

156.    Defendant Oliver negligently failed to provide sufficient supervision for J.C.D., K.D., and other students on a repeated basis, to the point that K.D. sexually abused and harassed J.C.D.

157.    At all times pertinent herein, Defendants Mitchell, Chambliss, and Oliver were the respective agents, servants, employees, and/or representatives of Defendant School Board.

158.    Mitchell, Chambliss and Oliver were each at all times acting within the scope of their agency, service, and employment by Defendant School Board.

159.    It was reasonably foreseeable that if the Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to Plaintiff, children entrusted to their care would be vulnerable to sexual abuse and repeated harmful action.

160.    Each of the Defendants' actions and omissions were direct and proximate causes of J.C.D.'s injuries, which were entirely foreseeable and preventable. Had the Defendants acted in a reasonably prudent manner, J.C.D. would not have suffered the injuries complained of herein, including

those complained of in paragraph 78 above.

161.    But for the actions and omissions committed by the Defendants while they were acting within the scope of their employment, J.C.D. would not have suffered injuries and damages alleged herein.

162.    As a direct and proximate result of Mitchell's, Chambliss's and Oliver's conduct, for which the Board is vicariously liable, J.C.D. has suffered damages as previously described and incorporated herein.

163.    Defendants directly or by and through their actual or apparent agents, servants or employees—including but not limited to the faculty and staff who attended to, taught or provided care to J.C.D.at Montebello or other premises under its or its affiliates' control or management—failed to act as reasonably competent school officials and educators would have acted under the same or similar circumstances and in the same or a similar community, also breached their duties, violated the applicable standards of care, and were negligent in the following ways, among others:

  a.    Failing to implement, enforce and make known policies pertaining to the prevention of student-on-student sexual abuse and harassment;

  b.    Failing to ensure that students, including but not limited to J.C.D., were sufficiently and adequately supervised and protected;

  c.    Failing to educate teachers and students on proper and appropriate student boundaries and behaviors;

  d.    Failing to sufficiently address, investigate and resolve any supervision or disciplinary issues that were occurring in Oliver's classroom and were affecting J.C.D.'s safety and personal well-being;

  e.    Failing to take reasonable steps to protect J.C.D. and ensure she did not fall victim to physical or sexual assault;

  f.    Failing to conduct an appropriate investigation into the causes and circumstances of

the physical or sexual assaults inflicted on J.C.D.;

g.  Failing to provide assistance to teachers, including Oliver, to ensure that every student was carefully monitored including J.C.D.;

h.  Failing to ensure that J.C.D. was protected from physical or sexual assault by other students at Montebello;

i.  Failing to adequately train, supervise, or instruct their agents, servants or employees, including Oliver, to appropriately manage a class of the size J.C.D. was in;

j.  Failing to provide adequately trained and supervised employees and staff to care for J.C.D. and other students;

k.  Failing to fulfill their duties to J.C.D. as an invitee on the premises of Montebello, by failing to use reasonable care to ensure that there was a clear line of sight to supervise K.D., J.C.D., and other students;

l.  Failing to protect J.C.D. from unreasonably dangerous conditions on the premises;

m.  Failure to warn Plaintiffs of the risk K.D. posed to her under the circumstances;

n.  Failing to establish, follow, or enforce appropriate policies, procedures, or protocols to properly address the needs of students including J.C.D.; and

o.  Other negligent acts and omissions that may be revealed during the course of discovery.

164.  Each of the foregoing negligent acts and omissions was a direct and proximate cause of J.C.D.'s injuries, which were entirely foreseeable and preventable. Had the Defendants acted in a reasonably prudent manner and not been negligent, J.C.D. would not have suffered the injuries complained of herein, including those enumerated in paragraph 78 above.

165.  It was reasonably foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to their minor students, including but not limited to J.C.D., children entrusted to

their care would be vulnerable to sexual abuse and repeated harmful action.

166.     Defendants, directly and by and through their agents, apparent agents, servants, and/or employees, who were acting at all relevant times within the scope of their authority, knew or reasonably should have known that J.C.D. was susceptible and vulnerable to abuse and assault.

167.     But for the Defendants' breach of duty, Plaintiff would not have been sexually abused by K.D. and would not have suffered any injury.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for economic, non- economic, and punitive damages, costs, pre- and post-judgement interest, and attorney's fees as permitted by law and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT VI

### NEGLIGENT SUPERVISION, MONITORING, AND TRAINING
### (Against School Board, Mitchell, and Chambliss)

168.     Plaintiff repeats and re-alleges each and every factual allegation set forth above and below as though fully set forth at length herein.

169.     Defendants, directly and by and through their agents, servants, and/or employees, each had a duty to engage in reasonable supervision, monitoring, training, and retention for any employees, volunteers, and other individuals who interacted with children or accepted responsibility for children under their care.

170.     Defendants, by and through their agents, servants, and/or employees, knew or reasonably should have known that Oliver was unable to control, monitor, protect and supervise children in her class.

171.     Plaintiff is informed and believes that Mitchell, Chambliss, and other staff and teachers had reason to know that Oliver was unable to sufficiently supervise the students in her class. Defendants failed to provide sufficient training for Oliver so that she was capable of effectively monitoring and protecting the safety of the students under her charge.

172.    Defendants Mitchell and Chambliss were tasked by the Board with supervising and training school employees and faculty how to prevent sexual assault and harassment but failed to do so adequately.

173.    Defendants Mitchell and Chambliss failed to ensure that school staff and faculty were sufficiently trained and prepared to control and monitor student behavior so as to prevent student-on-student sexual assault and harassment.

174.    Defendants Board, Mitchell, and Chambliss systematically breached their duty to Plaintiffs by:

  a.    failing to monitor staff, employees, agents and teachers, including Oliver, to ensure that they provided proper care and supervision to children and complied with Defendants' policies and procedures;

  b.    failing to sufficiently monitor minor students to ensure that they were behaving in a safe and appropriate manner;

  c.    failing to sufficiently train staff and employees, including Oliver, on child safety on campus;

  d.    failing to properly train and re-train teachers and other employees and staff who worked with children to be on the lookout for, prevent, and report conduct that endangered the health and welfare of minors;

  e.    failing to provide a safe environment where children are protected from sexual abuse and harassment;

  f.    failing to promptly remove Plaintiff from Oliver's classroom after the sexual abuse commenced;

  g.    failing to ensure that Plaintiff and K.D. were kept separate at all times; and

  h.    Other negligent actions and omissions that may be disclosed through the course of

discovery.

175.    It was reasonably foreseeable that if Defendants did not adequately fulfill the duty of care owed to children in their care, including but not limited to Plaintiff, such children would suffer sexual abuse and repeated harmful action.

176.    Each of the foregoing negligent acts and omissions was a direct and proximate cause of J.C.D.'s injuries, which were entirely foreseeable and preventable. Had the Defendants acted in a reasonably prudent manner and not been negligent, J.C.D. would not have suffered the injuries complained of herein, including but not limited to the injuries described in paragraph 78, *supra*.

177.    The wrongful conduct described herein on the part of Defendants directly and proximately caused Plaintiffs to sustain severe and permanent damages as described above. No negligence or want of due care on the part of Plaintiffs or any individual or entity unrelated to the Defendants contributed to these damages.

178.    Defendants, directly or by and through their actual or apparent agents, servants or employees—including but not limited to faculty and staff who attended to, taught or provided care to J.C.D.at Montebello or other premises under its or its affiliates' control or management—failed to act as reasonably competent school officials and educators would have acted under the same or similar circumstances and in the same or a similar community, also breached their duties, violated the applicable standards of care, and were negligent in the following ways, among others:

       a.   Failing to implement, enforce and make known policies pertaining to the prevention of student-on-student sexual abuse and harassment;

       b.   Failing to ensure that students, including but not limited to J.C.D., were sufficiently and adequately supervised and protected;

       c.   Failing to educate teachers and students on proper and appropriate student

boundaries and behaviors;

d.   Failing to sufficiently address, investigate and resolve any supervision or disciplinary issues that were occurring in Oliver's classroom and were affecting J.C.D.'s safety and personal well-being;

e.   Failing to take reasonable steps to protect J.C.D. and ensure she did not fall victim to physical or sexual assault;

f.   Failing to conduct an appropriate investigation into the causes and circumstances of the physical or sexual assaults inflicted on J.C.D.;

g.   Failing to provide assistance to teachers, including Oliver, to ensure that every student was carefully monitored including J.C.D.;

h.   Failing to ensure that J.C.D. was protected from physical or sexual assault by other students at Montebello;

i.   Failing to adequately train, supervise, or instruct their agents, servants or employees, including Oliver, to appropriately manage a class of the size J.C.D. was in;

j.   Failing to provide adequately trained and supervised employees and staff to care for J.C.D. and other students;

k.   Failing to fulfill their duties to J.C.D. as an invitee on the premises of Montebello, by failing to use reasonable care to ensure that there was a clear line of sight to supervise K.D., J.C.D., and other students;

l.   Failing to protect J.C.D. from unreasonably dangerous conditions on the premises;

m.   Failure to warn Plaintiffs of the risk K.D. posed to her under the circumstances;

n.   Failing to establish, follow, or enforce appropriate policies, procedures, or protocols to properly address the needs of students including J.C.D.; and

o.   Other negligent acts and omissions as may be revealed during the course of

discovery.

179.    Each of the foregoing negligent acts and omissions was a direct and proximate cause of J.C.D.'s injuries, which were entirely foreseeable and preventable. Had the Defendants acted in a reasonably prudent manner and not been negligent, J.C.D. would not have suffered the injuries complained of herein, including those enumerated in paragraph 78 above.

180.    It was reasonably foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to their minor students, including but not limited to J.C.D., children entrusted to their care would be vulnerable to sexual abuse and repeated harmful action.

181.    Defendants, directly and by and through their agents, apparent agents, servants, and/or employees, who were acting at all relevant times within the scope of their authority, knew or reasonably should have known that J.C.D. was susceptible and vulnerable to abuse and assault.

182.    But for the Defendants' breach of their duties, J.C.D. would not have been sexually abused by K.D. and Plaintiffs would not have suffered any injuries.

WHEREFORE, Plaintiffs demand judgment against the Board, Mitchell, and Chambliss, jointly and severally, for economic, non-economic, and punitive damages, costs, pre- and post-judgement interest and attorney's fees under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT VII

### GROSS NEGLIGENCE
### (against all Defendants)

183.    Plaintiffs repeat and re-allege each and every factual allegation set forth above and below as though fully set forth at length herein.

184.    Defendants, directly and by and through their agents, servants, and employees, had notice

of substantial danger of harm to J.C.D., in that they knew or were recklessly indifferent to the fact that K.D. was at risk of sexually harassing and assaulting fellow students, including J.C.D.

185.    Defendants had a duty to closely supervise K.D., given his risk profile.

186.    Defendants directly or by and through their actual or apparent agents, servants or employees—including but not limited to the faculty and staff who attended to, taught or provided care to J.C.D. at Montebello or other premises under its or its affiliates' control or management—failed to act as reasonably competent school officials and educators would have acted under the same or similar circumstances and in the same or a similar community, also breached their duties, violated the applicable standards of care, and were negligent in the following ways, among others:

   a.   Failing to implement, enforce and make known policies pertaining to the prevention of student-on-student sexual abuse and harassment;

   b.   Failing to ensure that students, including but not limited to J.C.D., were sufficiently and adequately supervised and protected;

   c.   Failing to educate teachers and students on proper and appropriate student boundaries and behaviors;

   d.   Failing to sufficiently address, investigate and resolve any supervision or disciplinary issues that were occurring in Oliver's classroom and were affecting J.C.D.'s safety and personal well-being;

   e.   Failing to take reasonable steps to protect J.C.D. and ensure she did not fall victim to physical or sexual assault;

   f.   Failing to conduct an appropriate investigation into the causes and circumstances of the physical or sexual assaults inflicted on J.C.D.;

   g.   Failing to provide assistance to teachers, including Oliver, to ensure that every student was carefully monitored including J.C.D.;

h.  Failing to ensure that J.C.D. was protected from physical or sexual assault by other students at Montebello;

i.  Failing to adequately train, supervise, or instruct their agents, servants or employees, including Oliver, to appropriately manage a class of the size J.C.D. was in;

j.  Failing to provide adequately trained and supervised employees and staff to care for J.C.D. and other students;

k.  Failing to fulfill their duties to J.C.D. as an invitee on the premises of Montebello, by failing to use reasonable care to ensure that there was a clear line of sight to supervise K.D., J.C.D., and other students;

l.  Failing to protect J.C.D. from unreasonably dangerous conditions on the premises;

m.  Failure to warn Plaintiffs of the risk K.D. posed to her under the circumstances;

n.  Failing to establish, follow, or enforce appropriate policies, procedures, or protocols to properly address the needs of students including J.C.D.; and

o.  Other negligent acts and omissions as may be revealed during the course of discovery.

187.  Each of the foregoing grossly negligent acts and omissions was a direct and proximate cause of J.C.D.'s injuries, which were entirely foreseeable and preventable. Had the Defendants not been grossly negligent, J.C.D. would not have suffered the injuries complained of herein, including those enumerated in paragraph 78 above.

188.  It was reasonably foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to their minor students, including but not limited to J.C.D., children entrusted to their care would be vulnerable to sexual abuse and repeated harmful action.

189.  Defendants, directly and by and through their agents, apparent agents, servants, and/or employees, who were acting at all relevant times within the scope of their authority, knew or reasonably

should have known that J.C.D. was susceptible and vulnerable to abuse and assault.

190.    But for the Defendants' grossly negligent conduct, J.C.D. would not have been sexually abused by K.D. and Plaintiffs would not have suffered any injury.

WHEREFORE, Plaintiffs demand judgment against the Board, Mitchell, Chambliss, and Oliver for economic, non-economic, and punitive damages, costs, pre- and post-judgement interest and attorney's fees under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## JURY DEMAND

Plaintiffs demand trial by jury against all Defendants on all issues so triable.

Respectfully submitted,

Date: April 4, 2025                          */s/ Patrick A. Thronson*
                                            Patrick A. Thronson (#18906)
                                            **Wais, Vogelstein, Forman, Koch &**
                                            **Norman, LLC**
                                            1829 Reisterstown Rd., Suite 425
                                            Baltimore, MD 21208
                                            Telephone: 410-998-3600
                                            Facsimile: 410-998-3680
                                            Email: patrick@malpracticeteam.com

                                            *Attorneys for Plaintiffs*