IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **J.D. et al.**  *Plaintiffs,*  v.  **BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS, et al.**  *Defendants.* | \*  \*  \*  Case No. 1:25-cv-1125-JMC  \*  \*  \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Plaintiffs, J.D., et al. (collectively, the "Plaintiffs") initiated the present lawsuit on April 4, 2025. (ECF No. 1). The lawsuit arises from an alleged sexual assault that occurred at Defendants' school. *Id.* Plaintiffs assert violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX") against Defendant Baltimore City Board of School Commissioners ("BCBSC") (Count I); a violation of Plaintiff J.C.D.'s rights under 42 U.S.C. § 1983 against Defendant Mitchell (Count II); a violation of Plaintiff J.C.D.'s rights under 42 U.S.C. § 1983 against Defendant Chambliss (Count III); a violation of Plaintiff J.D.'s rights under 42 U.S.C. § 1983 against Defendant Oliver (Count IV); negligence against all Defendants (Count V); negligent supervision, monitoring, and training against BCBSC, Defendant Mitchell, and Defendant Chambliss (Count VI); and gross negligence against all Defendants (Count VII). Presently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint. (ECF No. 27). The motion has been fully briefed (ECF Nos. 27, 33, 36) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, Defendants' Motion to Dismiss (ECF No. 27) shall be GRANTED in part and DENIED in part.

**I.     BACKGROUND**

Plaintiff J.C.D. attended Defendant BCBSC's school, Montebello Elementary. (ECF No. 1 at 2).[1] In April 2022, Plaintiff J.C.D. was in Defendant Oliver's third grade class. *Id.* Plaintiffs allege J.C.D. "was sexually abused by one of her classmates in Defendant Oliver's third-grade classroom." *Id.* Specifically, Plaintiffs assert that the assault was perpetrated by a male student ("K.D.") who was also in Defendant Oliver's class that year. *Id.* at 9. "Prior to April 25, 2022, K.D. suffered from sexual abuse." *Id.* Also prior to April 25, 2022, Plaintiffs allege the school principal, Defendant Mitchell, the assistant principal, Defendant Chambliss, and Defendant Oliver knew about K.D.'s past abuse because K.D.'s great-grandmother made a report that "K.D. had previously been sexually abused and had serious behavioral issues that could potentially pose a threat to other students." *Id.* at 10.

On April 25, 2022, "K.D. sexually harassed and assaulted J.C.D. in full view of her teacher and the other students in class." *Id.* at 9. Thereafter, Defendant Mitchell informed Plaintiff J.C.D's mother (Plaintiff J.E.D.) of what happened "and promised that J.C.D. would not be exposed to K.D. any further at school." He additionally "indicated that [the school] would be making a referral to the school district's Title IX Office, which would call with a case number and next steps. No one ever did so." *Id.* After confirming the alleged assault with Plaintiff J.C.D, Plaintiff J.E.D. took her for a medical evaluation with her physician. *Id.* On April 26, 2022, Plaintiff J.D. (Plaintiff J.C.D.'s father) requested "a formal incident report" from Defendant Chambliss and Defendant Mitchell "and a meeting with K.D.'s guardian." *Id.*

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

In May 2022, a meeting took place between Defendant Chambliss, Defendant Mitchell, K.D., and K.D.'s great-grandmother, in which she told Plaintiffs about her report. *Id.* at 10. K.D.'s great-grandmother also confirmed that K.D.'s family requested an aide for him, but Defendants denied that request." *Id.* Plaintiffs assert that "Defendants did not report K.D.'s assault of J.C.D. to law enforcement or Child Protective Services, contrary to legal requirements for mandated reporting" or "impose any discipline on K.D." *Id.*

"Plaintiffs kept J.C.D. home from school from April 26, 2022 through May 2, 2022, out of concern for her safety at school, and because of J.C.D's fear of being in the classroom with K.D." *Id.* After Plaintiff J.C.D. returned to school on May 3, 2022, she was placed in the same classroom as K.D "despite Mitchell's promise that that would not happen. This caused J.C.D. tremendous emotional distress." *Id.* Afterwards, Plaintiffs had another conversation with Defendant Mitchell, in which he "again promised that J.C.D. would not be placed in the same classroom as K.D." *Id.* On May 10, 2022, "having requested and not received an incident report or safety plan, Plaintiffs filled out an online form on the website of Baltimore City Public Schools to report the harassment of her daughter." *Id.* The next day, on May 11, 2022, J.C.D. and K.D. were placed in the same classroom. *Id.*

On June 8, 2022, Defendant Mitchell "sent an informal report to Plaintiffs detailing the findings of an internal investigation." *Id.* at 11. "The report corroborated the abuse J.C.D. experienced and stressed that K.D. and J.C.D. should not be in the same classroom under any circumstances." *Id.*

During the 2023-2024 school year, Plaintiff J.C.D. reported to her parents that K.D. "had been in her class [from] August 28, 2023" to September 4, 2023. *Id.* According to Plaintiffs, "Defendants never notified Plaintiffs that K.D. had been placed in J.C.D's class" and "Defendants

3

implemented no safety plan to prevent her from encountering K.D." *Id.* After learning that J.C.D. was placed in class with K.D., Plaintiffs withdrew J.C.D. from the Baltimore City Public School system and "enrolled her in an independent school." *Id.* at 14.

Plaintiffs brought the instant case on April 4, 2025. Defendants filed a motion to dismiss on June 12, 2025 (ECF No. 22), which was denied without prejudice pending consents to proceed with a magistrate judge (ECF No. 23). All parties consented to proceed with the undersigned on June 13, 2025 (ECF No. 26). Thereafter, Defendants filed the present Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 27).

## II. LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been

stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

III.   **ANALYSIS**

   A.   **Plaintiffs Fail to Allege a Pre-Assault Indifference Title IX Claim under the Fourth Circuit's High Bar But Allege a Plausible Post-Assault Indifference Claim.**

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiffs assert a Title IX violation under the theory of actual knowledge and deliberate indifference.[2] (ECF No. 1 at 14-15). In such cases, a plaintiff must allege

> (1)   they were a student at an educational institution receiving federal funds;
> (2)   they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school;
> (3)   the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and
> (4)   the school acted with deliberate indifference to the alleged harassment.

*Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263-34 (4th Cir. 2021).

The allegations give rise to two instances of actual knowledge and deliberate indifference: (1) actual knowledge of K.D.'s *risk* to J.C.D and deliberate indifference to it prior to the assault,

---

[2] In Defendants' Motion to Dismiss, they argue the Complaint fails to allege Defendant BCBSC acted with deliberate indifference after receiving actual knowledge of the alleged assault (ECF No. 27 at 5-6). Then, in their Reply, Defendants also argue that the alleged sexual assault is not severe within the meaning of Title IX. (ECF No. 36 at 2). In the Court's view, the more pertinent argument—the argument to which Plaintiffs had an opportunity to respond— is the first one. The question common to all Counts is whether the Defendants' response to the alleged sexual assault was sufficient. This Court has recognized that "[e]ven a single incident of sexual harassment, if sufficiently severe, can inflict serious lasting harms on the victim…" *Doe v. Morgan State Univ.* 544 F.Supp.3d 563, 576 (D. Md. 2021) (quoting *Fairfax Cnty.*, 1 F.4th at 274). Therefore, the Court does not find it necessary to address Title IX "severity" at this juncture.

and (2) actual knowledge of K.D.'s alleged assault on J.C.D. and the deliberate indifference to it that followed.  (ECF No. 1). In the first instance, Plaintiffs argue, "Pre-assault indifference to a known danger of harassment/abuse—as opposed to an actual occurrence of harassment or abuse—is sufficient to establish deliberate indifference." (ECF No. 33 at 11) (emphasis in original).  This, in turn, means that the Court must consider whether the allegations, if true, plausibly set forth: (1) whether the facts of which Defendants had actual knowledge prior to the assault were sufficient to establish a known danger of sexual harassment/sexual abuse by K.D. upon J.C.D. prior to its occurrence; and (2) if so, were Defendants deliberately indifferent to that danger. In the second instance, they argue Defendants "knew of K.D.'s assault on J.C.D…That alone is sufficient to establish actual knowledge." *Id.* at 13.  As Plaintiffs allege, "K.D. sexually harassed and assaulted J.C.D. in full view of her teacher and the other students in class on April 25, 2022." (ECF No. 1 at 9).   Regarding the post-assault indifference, the Court agrees with Plaintiffs that such allegations, if true, plausibly establish that Defendants had actual knowledge of sexual harassment/sexual assault upon J.C.D. such that the Court must only consider whether the allegations, if true, set for a plausible basis to conclude that Defendant BCBSC acted with deliberate indifference to it.

> 1. The Allegations Do Not Allege a Pre-Assault Deliberate Indifference Claim under the Fourth Circuit's Actual Notice Standard Because There was No Evidence of a Previous Harassment/Assault.

The Court first considers whether Defendants had the requisite knowledge under the pre-assault indifference claim.  Plaintiffs argue that "Defendants mischaracterize the applicable standard in claiming that the actual notice is lacking without concrete allegations that they had knowledge of prior acts of Title IX harassment committed by K.D. against J.C.D." (ECF No. 33 at 11).  But the Fourth Circuit applies a "more stringent test" that requires actual notice of a harassment, "notwithstanding out-of-circuit precedent to the contrary." *Doe v. Liberty Univ., Inc.*,

Case No. 6:21-cv-0059, 2022 WL 4773607, at *4 (W.D. Va.) (citations omitted). This standard presents a challenge for pre-assault indifference claims. *See Liberty Univ., Inc.*, 2022 WL 4773607 at *4.

In *Doe v. Liberty University, Inc.*, the Western District of Virginia considered the viability of a pre-assault indifference claim in the Fourth Circuit. *Id.* Plaintiff alleged that prior to the assault in that case (rape involving a "date rape" drug) defendant had actual knowledge that its "policies and procedures as implemented were enabling rapes and other serious sexual assaults." *Id*. In reaffirming that Title IX required actual notice of assault against the plaintiff, the court relied, in part, on the Fourth Circuit's ruling in *Baynard v. Malone*, 268 F.3d 228 (4th Cir. 2001). In *Bayard*, notwithstanding the school principal's actual knowledge of prior allegations of sexual assault by the perpetrator involving another student such that the principal *should have been* aware of the potential for abuse of the plaintiff, such knowledge was insufficient to satisfy Title IX because it did not involve the student-plaintiff. *Id*. at 238 (emphasis added).

The Fourth Circuit's post-*Baynard* decision in *Fairfax County School District*, reaffirmed *Baynard's* actual notice standard, although recognizing that a school's receipt of a report alleging a specific act or instance of sexual harassment—even if not appreciated or believed to be such--could be sufficient to show actual notice if it could be objectively construed as alleging sexual harrassment. *Fairfax Cnty. Sch. Dist.*, 1 F.4th at 263-265.

This line of cases makes clear that K.D.'s grandmother's report that K.D. suffered sexual abuse in the past—even if combined with a concern that such abuse might raise the risk of K.D. becoming a perpetrator of continuing that cycle, does not provide the requisite actual notice to plead a deliberate indifference claim based on pre-assault knowledge in the Fourth Circuit. (ECF No. 1 at 9). As Defendants point out, K.D. was a victim of previous abuse, not a perpetrator. *Id.* In

the instant case, there was no report "that can objectively be construed as alleging" actual notice of an instance of sexual harassment. *Fairfax Cnty. Sch. Dist.*, 1 F.4th at 265. Therefore, the Plaintiffs' pre-assault indifference claim is insufficient in the Fourth Circuit.

### 2. Plaintiffs Plausibly Allege Defendant BCBSC Acted with Deliberate Indifference at the Motion to Dismiss Stage.

Turning to the post-assault indifference claim, "[i]t is not true 'that only a complete failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice to shield a school from liability.'" *Doe v. Morgan State Univ.*, 544 F.Supp.3d 563, 578 (D. Md. 2021) (quoting *S.B. ex. rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016)). Instead, the Fourth Circuit has made clear that schools must "engage in efforts that [are] 'reasonably calculated to end [the] harassment.'" *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 689 (4th Cir. 2018) (quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669 (2nd Cir. 2012)). That said, when considering school action, "school administrators are entitled to substantial deference when they calibrate a disciplinary response to student-on-student bullying or harassment, and a school's actions do not become 'clearly unreasonable' simply because a victim or his parents advocated for stronger remedial measures." *S.B. ex. rel. A.L.*, 819 F.3d at 77. Nonetheless, "an educational institution may be held liable for discrimination under Title IX when its indifference makes its students liable or vulnerable to harassment, even if no harassment occurs after the report of sexual harassment." *Robinson v. Bd. of Educ. Washington Cnty.*, No. 1:22-cv-1102-ELH, 2023 WL 2499854, at *9 (D. Md. Mar. 14, 2023) (cleaned up).

What conduct constitutes deliberate indifference depends on whether the school's "response…or lack thereof is clearly unreasonable in the light of the known circumstances." *S.B. ex. rel. A.L.*, 819 F.3d at 77. In *Sciacca v. Durham County Board of Education*, the Middle District of North Carolina considered a student-on-student bus attack. *Sciacca v. Durham Cnty. Bd. of*

*Educ.*, 509 F.Supp.3d 505, 526 (M.D.N.C. 2020). There, the facts were insufficient to support an inference that the school's acts were clearly unreasonable because "the students involved were charged with juvenile delinquency" and the school "investigated [a post-notice] episode" two years later.[3] *Id.* In *Blair v. Appomattox County School Board*, the plaintiff alleged a plausible deliberate indifference claim when the school investigated the alleged bullying and sexual harassment but failed to take any disciplinary action against the perpetrators—all while they continued to "[follow] behind her in a group, [touch] her, [threaten her with knife violence and rape, and [shove] her against the hallway wall." *Blair v. Appomottax Cnty. Sch. Bd.*, 147 F.4th 484, 492 (4th Cir. 2025). The Fourth Circuit reasoned that while the defendant board "was not entirely unresponsive" because it "found an alternative restroom," doing so was not a reasonably calculated effort to stop the harassment. *Id.; see also Hurley*, 911 F.3d at 689 ("although [the defendant] was not entirely unresponsive to the allegations of harassment—[the defendant] did not engage in efforts that were reasonably calculated to end the harassment" because the school "merely responded with two listening circles, a generic email, and by sending a campus police officer with a threatened student on one evening").

Plaintiffs argue that Defendant BCBSC acted unreasonably by placing J.C.D. and K.D. in the same classroom on May 3, 2023, May 11, 2023, and during the week of August 28, 2023 – September 3, 2023. (ECF No. 1 at 10-11). They also argue "a report summarizing the findings of the investigation was not promulgated until more than a month after the incident"; that "no safety plan was formulated"; and that the school "failed to discipline K.D." (ECF No. 33 at 14). Defendants counter,

> The Complaint identifies numerous reasonable steps the Defendants took after learning of the alleged sexual assault, including: immediately notifying

---

[3] The court recognized that the allegations were silent as to the school's acts or omissions that led to the student's juvenile delinquency charge. *Sciacca*, 509 F.Supp.3d at 526.

> J.C.D.'s parents of the alleged abuse, Compl. ¶ 58; facilitating a meeting among themselves, Plaintiffs, K.D., and K.D.'s great-grandmother within days of the alleged incident, Compl. ¶ 61; formulating a safety plan in which the students would be separated, Compl. ¶ 65; conducting an internal investigation that was completed within weeks of the alleged abuse, Compl. ¶ 69; and implementing the disciplinary measure of separating the two students, which successfully kept them in separate rooms nearly all times thereafter and prevented any additional alleged harassment, Compl. 65-68, 72 (alleging that, after the alleged assault, the students were in the same room only twice in the 2021-2022 school year, never in the 2022-2023 school year, and for a single week in the 2023-2024 school year).

(ECF No. 36 at 6).

It is clear that this is not a "no action" case based on the facts alleged in the case. And, the facts alleged show more action by Defendants than the school's response *Blair*. But the Court is not prepared to say at the motion to dismiss stage that the facts alleged meet or exceed the *Sciacca* response. They well may, but a thorough evaluation of the Defendants' response must await a more fulsome factual record.

Therefore, Count I is dismissed to the extent is it based on pre-assault indifference, but survives to the extent it is based on post-assault indifference.

### B. Plaintiffs Fail to Plead Cognizable Deliberate Indifference and Substantive Due Process Violations under 42 U.S.C. § 1983 Because They Allege Only Omissions.

In Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Plaintiffs clarified that they predicate their § 1983 claims only on a theory of state created danger. (ECF No. 33 at 15). "[T]o establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Stevenson ex. rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F.App'x 25, 31 (4th Cir. 2001). "The state-created danger exception is narrow." *Robinson*, 2023 WL 6643373 at *16. Further, "the bar for what constitutes an affirmative

act is high." *Turner v. Thomas*, 930 F.3d 640, 645 (4th Cir. 2019). Courts should "resist the temptation to accept plaintiffs' attempts to artfully recharacterize inaction as action." *Burns-Fisher v. Romero-Leher*, 57 F.4th 721, 426 (4th Cir. 2023).

Defendants argue Plaintiffs "[attempt] to reframe Defendants' alleged omissions as affirmative acts." In *Pinder v. Johnson*, the plaintiff alleged a police officer failed to keep a perpetrator who assaulted a plaintiff in her home in custody. *Pinder v. Johnson*, 54 F.3d at 1172, 1175. She brought suit after he later burned down her home and killer her children sleeping inside. *Id*. The court concluded that the failure to keep him in custody constituted a mere omission. *Id*. Likewise, in *Robinson v. Board of Education of Washington County*, this Court dismissed a claim when the plaintiff "[premised] her state-created danger claim on [the defendant's] alleged failure to communicate; her failure to assist in relocating [the perpetrator-student] to a new school; and her failure to establish safety measures." *Robinson*, 2023 WL 6643373 at *18.

In this case, Plaintiffs' state-created danger theory rests on the allegations that Defendant Mitchell, Defendant Chambliss, and Defendant Oliver

> declined to take steps to provide J.C.D. with equal access to public education by refusing to provide key information to Plaintiffs…, declining to take measures to prevent future sexual abuse of J.C.D., failing to ensure that J.C.D. would be allowed to attend another school within the same school district if safely attending Montebello was not possible, and by failing to implement any responsive means after the abuse occurred to ensure that J.C.D. received equal access to public education. [4]

---

[4] Plaintiffs plead other specific omissions like:
  a. **Failing** to take action to prevent J.C.D. from being abused by K.D., including by failing to provide an aide or other appropriate close supervision in the classroom environment;
  b. **Failing** to conduct its own internal investigation of the sexual abuse and harassment of J.C.D.:
  c. **Failing** to control and monitor the behavior of K.D. and failing to take immediate and appropriate corrective action to prevent him from committing sexual abuse and harassment against J.C.D.;
  d. **Choosing to take no action** to protect J.C.D., despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent further discrimination, sexual assault, abuse, harassment, and retraumatization;

(ECF No. 1 at 18, 20, 23).

These allegations constitute omissions in the Fourth Circuit. *Pinder v. Johnson*, 54 F.3d at 1172, 1175; *Burns-Fisher*, 57 F.4th at 426; *Robinson*, 2023 WL 6643373 at *18. In the Court's view Plaintiff's argument that these are affirmative refusals would be a mere attempt to reframe omissions as affirmative acts. *Pinder v. Johnson*, 54 F.3d at 1172, 1175; *Burns-Fisher*, 57 F.4th at 426.

The specific allegations that "[D]efendants repeatedly placed J.C.D. and K.D. in the same classroom following that assault, causing further emotional harm to J.C.D." warrants additional discussion. (ECF No 33 at 16). Plaintiffs allege the students "were placed" in the same classroom on May 3, 2022, May 11, 2022, and during the week of August 28, 2023, to September 4, 2023 (ECF No. 1 at 10-11). However, the Complaint does not allege any affirmative steps made to

---

e. **failing** to adequately provide or coordinate adequate health, psychological, counseling, and academic assistance and services to J.C.D. after the sexual abuse and harassment in order to minimize the harm suffered due to the discrimination and harassment, including sexual assault and abuse;

f. **failing** to develop policies and procedures to address all reports of sexual abuse and harassment to attend to and respond to complaints and information pertaining to abuse of a student by other students;

g. **failing** to appoint, designate and publicly identify a Title IX coordinator as required by 34 C.F.R. § 106.8(a) to investigate and communicate the findings of complaints of sexual abuse, and thereby the sexual abuse and harassment committed against J.C.D.;

h. **failing** to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment and sex discrimination complaints in violation of Title IX;

i. **failing** to establish an atmosphere at Montebello in which J.C.D. would feel safe, secure and content and be provided with the appropriate and equal opportunity to learn;

j. **failing** to provide sufficient training for school staff, employees, workers and representatives pertinent to sexual abuse and harassment of students;

k. **failing** to sufficiently train school staff, employees, workers, and representatives in Title IX requirements;

l. **failing** to terminate or discipline Montebello employees and agents identified herein, including Mitchell, Chambliss, and Oliver, for their willful disregard of the safety and rights of J.C.D., or being deliberately indifferent thereto; and

m. **other acts, omissions and deliberate indifferent conduct** that may be disclosed during the course of discovery.

*Id.* at 14-16 (emphasis added).

intentionally place the students together. (ECF No. 1). The facts alleged force the Court to speculate that Defendants took steps to intentionally place the students together rather than infer that the school simply failed to keep them separate. The allegations provide no basis on which the Court may do so. Here, allegations that the school did not keep the students separate on these three occasions do not support an inference that Defendants took affirmative steps to place them together. *Robinson*, 2023 WL 6643373 at *18. Under the Fourth Circuit's high bar, the facts alleged do not support a plausible state-created danger claim under § 1983. Therefore, Counts II-IV are dismissed.

### C.  Plaintiffs Plead a Plausible Negligence Claim at the Motion to Dismiss Stage.

To plead a cognizable negligence claim, Plaintiffs must allege "the existence of a duty owed by a defendant to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 51 (2016). Plaintiffs allege Defendants had a duty to prevent bodily harm to J.C.D., that Defendants breached the duty,[5] and that the breach

---

[5] Specifically, they allege Defendants breached the duty of care by
    a. Failing to implement, enforce and make known policies pertaining to the prevention of student-on-student sexual abuse and harassment;
    b. Failing to ensure that students, including but not limited to J.C.D., were sufficiently and adequately supervised and protected;
    c. Failing to educate teachers and students on proper and appropriate student boundaries and behaviors;
    d. Failing to sufficiently address, investigate and resolve any supervision or disciplinary issues that were occurring in Oliver's classroom and were affecting J.C.D.'s safety and personal well-being;
    e. Failing to take reasonable steps to protect J.C.D. and ensure she did not fall victim to physical or sexual assault;
    f. Failing to conduct an appropriate investigation into the causes and circumstances of the physical or sexual assaults inflicted on J.C.D.;
    g. Failing to provide assistance to teachers, including Oliver, to ensure that every student was carefully monitored including J.C.D.;
    h. Failing to ensure that J.C.D. was protected from physical or sexual assault by other students at Montebello;
    i. Failing to adequately train, supervise, or instruct their agents, servants, or employees, including Oliver, to appropriately manage a class of the size J.C.D. was in;

was the actual and proximate cause of J.C.D.'s harm. (ECF No. 1 at 25-28). Construing the allegations liberally, K.D.'s great-grandmother warned Defendants that K.D. had been victimized and "had serious behavioral issues that could potentially pose a threat to other students." (ECF No. 1 at 10). Plaintiffs aver this report made it "reasonably foreseeable that if the Defendants did not adequately exercise or provide the duty of care owed to children in their care, including by not limited to Plaintiff, children entrusted to their care would be vulnerable to sexual abuse and repeated harmful action." *Id.* at 26. Defendants argue that the report from K.D.'s great-grandmother "cannot support a negligence claim because Plaintiffs have not alleged that K.D. had a propensity to harm other students, much less that Defendants knew of such a propensity, and K.D.'s great-grandmother's generalized report does not provide notice of an unreasonable risk." (ECF No. 36 at 10).

Schools have a special duty "to exercise reasonable care to protect a pupil from harm." *Lunsford v. Bd. of Ed. of Prince George's Cnty.*, 280 Md. 665, 676 (1977). A school's standard of care frequently turns on the issue of foreseeability. *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 315 (2022) ("In many instances involving negligence claims against teachers and administrators, the plaintiffs' claim will rise or fall on the issue of foreseeability."). Indeed, in the school context, "it must be established that school authorities had sufficiently specific

---

j. Failing to provide adequately trained and supervised employees and staff to care for J.C.D. and other students;
k. Failing to fulfill their duties to J.C.D. as an invitee on the premises of Montebello, by failing to use reasonable care to ensure that there was a clear line of sight to supervise K.D., J.C.D., and other students;
l. Failing to protect J.C.D. from unreasonably dangerous conditions on the premises;
m. Failure to warn Plaintiffs of the risk K.D. posed to her under the circumstances;
n. Failing to establish, follow, or enforce appropriate policies, procedures, or protocols to properly address the needs of students including J.C.D.; and
o. Other negligent acts and omissions that may be revealed during the course of discovery.

(ECF No. 1 at 27-28).

knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated. *Id.* (quoting *Buchholz v. Patchogue-Medford Sch. Dist.*, 88 A.D.3d 843, 844, 931 N.Y.S.2d 113 (2011)).

Plaintiffs rely on *Kansas State Bank & Trust Co. v. Specialized Transportation Services* to argue the facts alleged support an inference that the sexual assault on J.C.D. was foreseeable. (ECF No. 33 at 21). *Kansas State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 591 (Kan. 1991). There, the Supreme Court of Kansas considered whether the evidence was sufficient to prove that the school district should have foreseen the perpetrator bus driver's propensity to molest. *Id.* at 595-96. The court concluded it was foreseeable the bus driver may molest because he demonstrated "emotionally disturbed" and "out of control" behavior including previous verbal abuse of other children. *Id.* at 598-99. Plaintiffs argue that "[e]vidence that a perpetrator engaged in strongly antisocial conduct is generally sufficient to indicate the possibility of sexually abusive behavior." (ECF No. 33 at n.88). On this point, Defendants argue if *Specialized Transportation* supports that notion at all, the Complaint does not allege strong anti-social behavior. (ECF No. 36 at 11). They posit that K.D.'s behavioral issues were unspecified, and therefore Plaintiffs "have not plausibly alleged that the purported abuse of J.C.D. was reasonably foreseeable, and Plaintiffs' negligence claim fails as a matter of law." (ECF No. 36 at 11).

Here, Plaintiffs' negligence claim arises from Defendants' alleged failure to prevent J.C.D.'s assault after K.D.'s great-grandmother told Defendants that he suffered previous sexual abuse and "had serious behavioral issues that could potentially pose a threat to other students." (ECF No. 1 at 10). Although the Complaint does not specify exactly what those "serious behavioral issues" were, it does convey K.D.'s grandmother's assessment that these behaviors posed a risk to other students. While not as precise as the behavior school officials actually

15

observed of the offender in *Specialized Transportation*, the Court concludes that as a matter of pleading, Plaintiffs' allegations are not so dissimilar as to warrant dismissal. Discovery will likely shed light on exactly what was conveyed and whether the risk posed was sufficient to put a reasonable school on notice.

Accordingly, Defendants' motion is DENIED as to Count V.

**D.     Plaintiffs Fail to Plead a Cognizable Negligent Hiring, Retention, Supervision, or Training Claim because The Facts Do Not Support an Inference that Defendant Oliver was Incompetent or that Defendants Should Have Known She was Incompetent.**

In Maryland, a negligent hiring, retention, supervision, or training claim requires allegations sufficient to support an inference of "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] ... as the approximate cause of the plaintiff's injuries." *Minnick v. Southwest Airline Co.*, Civil Case No. 1:22-cv-2084-JMC, 2024 WL 4252988, at *2 (D. Md. Sep. 20, 2024) (internal quotations omitted); *see also Latty v. St. Jospeh's Soc. of Sacred Heart, Inc.*, 198 Md.App. 254, 272 (Md. Spec. App. 2011) *abrogated on other grounds by Plank v. Cherneski*, 469 Md. 548 (2020). Moreover, "[t]here is a rebuttable presumption that an employer has used due care in hiring the employee." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004). Specifically, a plaintiff must allege an employer "had or should have had knowledge of [the employee's] conduct or general character which would have caused a prudent employer in these circumstances to have taken action." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996).

In *Mimmick v. Sw. Airline Co.*, this Court granted partial summary judgment on a negligent hiring, retention, supervision, or training claim when there was "no evidence of the specific

16

training they received, the supervision they were subject to, their employment records, or any evidence which could support a finding that defendant possessed actual or constructive knowledge of their employee's incompetence." 2024 WL 4252988, at *4.  Accordingly, this Court reasoned the plaintiff there "failed to allege facts…'which would have caused a prudent employer in these circumstances to have taken action.'" *Id.* quoting *Bryant*, 923 F. Supp. at 751).

Here, there are no allegations that support an inference that Defendants knew or should have known Defendant Oliver was "unable to control, monitor, protect and supervise children in her class" such that Defendants should have taken action.  (ECF No. 1 at 29).  There are no allegations that Defendant Oliver observed and ignored warning signs or that Defendants knew or should have known Defendant Oliver was incompetent to do so.  Nor are there allegations concerning the specific training Defendant Oliver received, the supervision she was subjected to, or the employment records Defendants maintained.  *Mimmick*, 2024 WL 4252988, at *4.  While Plaintiffs are correct that they need not submit a trial brief to survive a motion to dismiss, the allegations here are insufficient to allege Defendant Oliver's incompetence, that Defendants had knowledge of her incompetence, or a causal link between Defendants' conduct and J.C.D.'s alleged assault. Therefore, Count VI is dismissed.

      **E.**      **Plaintiffs Fail to Plead a Cognizable Gross Negligence Claim Because the Allegations Do Not Support an Inference that Defendants Acted with an Intentional Failure to Perform a Duty in Reckless Disregard for the Consequences.**

A claim for gross negligence requires a higher standard than negligence. *Barbre v. Pope*, 402 Md. 157, 187 (2007).  "[A] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."  *Id.* "Gross negligence must be pled with specificity." *Khawaja v. Mayor & City Council, City of Rockville*, 89 Md. App. 314, 318 (1991). Thus,

"[c]onclusory allegations of gross negligence are . . . insufficient for a plaintiff to prevail at the Rule 12(b)(6) stage." *Palmer v. Kirkland*, No. GLR-16- 2636, 2017 WL 11615522, at *4 (D. Md. June 23, 2017).

In their Complaint, Plaintiffs simply allege that Defendants were "recklessly indifferent to the fact that K.D. was at risk of sexually harassing and assaulting fellow students, including J.C.D." Compl. ¶ 184. This unsupported and conclusory allegation fails as a matter of law. Palmer, 2017 WL 11615522, at *4. Even where school defendants were aware of another student's dangerous propensities, this Court and others have dismissed gross negligence claims. *See, e.g., Doe v. Bd. of Educ. of Washington Cnty.*, No. JFM-15-00074, 2015 WL 4716065, at *4 (D. Md. Aug. 6, 2015) (dismissing gross negligence claim against assistant principal where plaintiffs alleged assistant principal failed to prevent a student-on-student assault despite being aware of ongoing bullying of plaintiff-student); took to remedy the harassment foreclosed any claim they were "utterly indifferent"); *see also Nkemakolam v. St. John's Military Sch.,* 890 F. Supp. 2d 1260, 1263 (D. Kan. 2012) (holding that principal's failure to protect student despite promising he would and prior knowledge of certain students' "dangerous propensities" did not state a plausible claim for gross negligence). As to Plaintiffs' arguments that Defendants' response to the incident creates a plausible inference of gross negligence, their suggestion that  Defendants  "failed to discipline K.D." or "implement a safety plan to protect J.C.D.," Opp'n at 23, are contradicted by the Complaint, which allegesboth that an internal investigation was performed with "detailed findings," and a recommendation to separate K.D. and J.C.D.  (ECF No. 1 at ¶ 69). Though Plaintiffs no doubt complain that those steps were insufficient and were not effectively carried out, such steps are sufficient to defeat a gross negligence claim.  *See Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 659 (D. Md. 2013), aff'd, 605 F. App'x 159 (4th Cir. 2015).

Accordingly, Count VII is dismissed.

## IV.     CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 27) is GRANTED in part and DENIED in part. Defendants' motion is granted in part as to Count I to the extent Plaintiffs' Title IX claim relies on pre-assault deliberate indifference but denied as to Count I to the extent Plaintiffs' rely on post-incident deliberate indifference.  Defendants' motion is granted as to Counts II, III, IV, VI and VII.  Defendants' motion is denied as to Count V.  To the extent Plaintiffs' claims are dismissed, such dismissal is without prejudice and with leave to amend.  If Plaintiffs choose to file an amended complaint as to the dismissed counts, Plaintiffs shall file it within twenty-eight (28) days from the date of this Memorandum Opinion and Order, at which time Defendants shall file an answer or other responsive pleading, including another motion to dismiss if appropriate, within twenty-one (21) days therefrom.

Date: September 15, 2025

/s/
J. Mark Coulson
United States Magistrate Judge